UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO: 08-21012-CR-KING

UNITED STATES OF AMERICA,

    Plaintiff,

v.

IRAIDA ALVAREZ,
ADIARIS FIGUEROLA,
ALEXIS PEREZ,
ERLIN OSWALDO PEREZ,
CARLOS STEWART, and
ROSA STEWART,

    Defendants.

_____/

## ORDER DENYING DEFENDANTS' OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT UNDER U.S. SENTENCING GUIDELINE § 2X1.1

This case involves a scheme by the Defendants to burn down a home and defraud an insurance company by filing a false insurance claim. Before the Court are the Defendants' objections to the sentencing calculations by the Government and the United States Probation Office pursuant to the United States Sentencing Guidelines. Defendants specifically suggest that they are entitled to a three-point reduction of the calculated sentence under United States Sentencing Guideline § 2X1.1 due to their involvement in an alleged "incomplete" conspiracy. The Court, in addition to completely reviewing all objections submitted by each Defendant, held an evidentiary hearing on the objections on March 30, 2009 (D.E. #133–38).

## I. BACKGROUND

On January 9, 2009, Defendants Erlin Oswaldo Perez ("E. Perez"), Carlos Stewart ("C. Stewart"), and Rosa Stewart ("R. Stewart") entered pleas of guilty to Count One of the Indictment charging each Defendant with conspiracy to defraud State Farm Insurance Company through the use of the mails, in violation of 18 U.S.C. § 1349 (2000) (D.E. #96, #98, #100). Defendant Iraida Alvarez ("Alvarez") entered a plea of guilty to Count One of the Indictment on January 27, 2009 (D.E. #106). Defendants Adiaris Figuerola ("Figuerola") and Alexis Perez ("A. Perez") entered pleas of guilty to Count One of the Indictment on February 12, 2009 (D.E. #109, #111). The facts under which these pleas arose are as follows:

In August 2008, a confidential informant ("CI") working in an undercover capacity approached Defendant E. Perez about the prospects of committing an arson at the CI's in-laws' residence located in Sunrise, Florida, and collecting on a fraudulent insurance claim (Presentence Investigation Rep. ¶ 11) (hereinafter "PSR"). On September 30, 2008, Defendant E. Perez introduced the CI to Defendant Alvarez (PSR ¶ 14). At this meeting, Alvarez told the CI that she could help him by introducing him to a public adjuster with whom her daughter, Defendant Figuerola, had previously worked (PSR ¶ 14). The CI told Alvarez that he was interested in her proposal. Later that day, Defendant E. Perez told the CI that Defendant Alvarez had contacted her daughter, Defendant Figuerola, and that she and her husband, Defendant A. Perez, required a $2,000 fee for introducing the CI to the public

adjuster (PSR ¶ 15). The CI agreed to pay them the introduction fee. On October 1, 2008, the CI met with Defendants Alvarez and Figuerola. At this meeting, Figuerola informed the CI that she had previously worked for a public adjuster who was employed at Florida Claims Experts, Inc. and would be willing to help him file a false insurance claim (PSR ¶ 16). Figuerola told the CI that the public adjuster "[did] this all the time." (PSR ¶ 16). Figuerola told the CI that she would need to give the adjuster a copy of the CI's in-laws' insurance policy before the adjuster would agree to meet with him (PSR ¶ 16).

The next day, the CI again met with Defendants Figuerola and A. Perez (PSR ¶ 17). At this meeting, the CI gave Figuerola a copy of his in-laws' insurance policy, which was with State Farm Insurance Company. The CI's in-laws' insurance policy included coverage for damage to the dwelling with a limitation of $223,700 and coverage for personal property with a limitation of $167,775 (PSR ¶ 17). Figuerola told the CI that she would pass the policy on to the public adjuster, and the adjuster would contact the CI to set up a meeting. Later that same day, Defendant Figuerola told the CI that the public adjuster had reviewed the insurance policy and advised that, in order for the CI to collect the maximum amount of money from the insurance company, the house would have to be a total loss (PSR ¶ 18). At that time, Defendants Figuerola and A. Perez informed the CI that the public adjuster was Defendant C. Stewart, along with his mother, R. Stewart (PSR ¶ 18).

On October 8, 2008, the CI met with Defendants R. Stewart, A. Perez, and Figerola in a parking lot to discuss the plan to set fire to the CI's in-laws' home and process the

3

fraudulent insurance claim (PSR ¶ 22). During the meeting, R. Stewart told the CI that they would need to arrange a time when she could visit the CI's in-laws' home to plan the fire. She also informed the CI that, as payment for her services, she required a $4,000 fee up front as well as 20% of the insurance settlement (PSR ¶ 23). Defendant R. Stewart also gave the CI a Florida Claims Experts, Inc. public adjuster contract to give to his in-laws for their signature.

A few weeks later, on October 23, 2008, the CI met with Defendant R. Stewart and paid her the $4,000 fee (PSR ¶ 29). Defendant R. Stewart then performed a walk-through of the CI's in-laws' residence (PSR ¶ 29). At this time, R. Stewart informed the CI that the fire would best be set in a bedroom with the use of an iron (PSR ¶ 29). R. Stewart told the CI that she would provide the iron, which did not have an automatic shut-off (PSR ¶ 29). Later that day, Defendant C. Stewart arrived at the CI's in-laws' residence with rubber gloves and a bag containing the iron. He was arrested inside the residence as he was putting on the rubber gloves next to the iron, preparing to set the fire (PSR ¶ 30). Defendants Alvarez, Figuerola, A. Perez, E. Perez, and R. Stewart were also arrested that day (PSR ¶ 32).

Upon the Defendants' entry of guilty pleas, a PSR was ordered and obtained for each Defendant. The PSRs failed to recommend a downward departure under U.S.S.G § 2X1.1(b)(2) for an incomplete conspiracy. Each Defendant objected to the PSR, alleging that they were entitled to a reduction based on their failure to complete all crucial steps in furtherance of their mail fraud scheme.

## II. DISCUSSION

The Defendants have pled guilty to conspiracy to commit mail fraud. In cases of conspiracy, the United States Sentencing Guidelines direct the Court to calculate the applicable offense level by using the base offense level from the guideline for the substantive offense, unless there is a specific offense guideline for the conspiracy charge that forms the basis for the sentencing. *See* U.S. Sentencing Guidelines Manual § 2X1.1 (2008) [hereinafter "U.S.S.G."]. The substantive offense of mail fraud is addressed by Section 2B1.1, which mandates a base offense level of 7. *See* U.S.S.G. § 2B1.1(a) (2008). As such, each Defendant's PSR recommends a base offense level of 7. (PSR ¶ 40). In cases of conspiracy, § 2X1.1 provides a three-level reduction of the base offense level,

> unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control.

U.S.S.G. § 2X1.1(b)(2) (2008). The commentary accompanying § 2X1.1 further explains the adjustment:

> In most prosecutions for conspiracies or attempts, the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim. In such cases, no reduction of the offense level is warranted. Sometimes, however, the arrest occurs well before the defendant or any co-conspirator has completed the acts necessary for the substantive offense. Under such circumstances, a reduction of 3 levels is provided under 2X1.1(b)(1) or (2).

U.S.S.G. § 2X1.1 cmt. background (2008).

5

In the case of the Defendants, the PSR does not recommend this three-point reduction to the base offense level. Defendants object to the PSR, arguing that they are entitled to the three-level reduction in sentencing because they had not completed or were not close to completing all the acts that they believed necessary for the completion of the mail fraud scheme. Defendants argue that "the offense was still essentially in the preparation stage in which the actual commission of the fraud to any degree was dependent on the co-defendants' commission of several additional steps that might or might not have been accomplished . . . ." (Def. Alvarez Obj. 2); (Def. Figuerola Obj. 4). While Defendants acknowledge that the scheme was foiled when Defendant C. Stewart was arrested while inside the residence before starting the fire, they contend that "the crucial steps necessary to commit fraud never took place because State Farm's insurance claim procedures were not followed." (Def. E. Perez Objs 3).

In support of their position, Defendants rely on the cases of *United States v. Puche*, 350 F.3d 1137 (11th Cir. 2003) and *United States v. Khawaja*, 118 F.3d 1454 (11th Cir. 1997). *See* (Def. Alvarez Obj. 2–3); (Def. Figuerola Obj. 4);(Def. E. Perez Obj. 3). In both *Puche* and *Khawaja*, multiple defendants were charged with conspiracies to commit money laundering. *Puche*, 350 F.3d 1141; *Khawaja*, 118 F.3d at 1456. Although the conspirators in both cases had agreed, and intended, to launder millions of dollars in the future, they were apprehended after laundering much smaller amounts. *Puche*, 350 F.3d

1156; *Khawaja*, 118 F.3d at 1456. In *Khawaja*, 118 F.3d at 1458, the defendants, after managing to launder $570,556, were arrested for a conspiracy to launder $2 million. In *Puche*, 350 F.3d at 1155, the defendants, after managing to launder $714,500, were arrested for a conspiracy to launder $6 million. In both cases, the Eleventh Circuit held that the defendants were entitled to the three-point sentence reduction found in U.S.S.G. § 2X1.1 because, even though the defendants had already successfully laundered a smaller amount of money and had shown their intent to launder millions, they had not taken the crucial steps to launder the remaining amount. *See Puche*, 350 F.3d at 1156 ("none of the defendants had taken crucial steps, such as contacting the agents or preparing more paperwork for more transfers, to launder the remaining six million dollars."); *Khawaja*, 118 F.3d at 1458 ("the conspirators had not taken crucial steps [including for example, preparing falsified documentation, securing cashier's checks, or arranging meetings for the exchange] to launder the remaining balance of $2 million.").

The facts of *Puche* and *Khawaja* are much different than the facts of the case before this Court. In both *Puche* and *Khawaja*, the Eleventh Circuit focused on the fact that an obvious condition precedent to completing a money laundering scheme is actually possessing the money that is to be laundered. *Puche*, 350 F.3d 1156; *Khawaja*, 118 F.3d at 1458. In both cases, at the time of arrest, the defendants were not in possession of the large amounts of money that they intended to launder, and therefore, could not believe that they had taken all of the necessary steps to finalize their money laundering schemes.

In contrast to *Puche* and *Khawaja*, in the case before this Court, there was no similar required condition precedent, because the Defendants had "completed all the acts the conspirators believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control." U.S.S.G. § 2X1.1(b)(2).

At the time of Defendant C. Stewart's arrest, the Defendants had completed the following numerous acts in furtherance of their mail fraud conspiracy: (1) executed a contract retaining Defendants C. Stewart and R. Stewart as public adjusters for the fraudulent claim (PSR ¶ 18); (2) Defendant R. Stewart had reviewed the insurance policy of the residence, and examined it enough to know the policy limitations and advise the CI that (PSR ¶ 18); (3) Defendants established fees to be paid among themselves and demanded these fees from the CI (PSR ¶¶ 15, 18, 23); (4) The CI had paid all of the required advance fees (PSR ¶¶ 28–29); (5) Defendant R. Stewart had visited the residence and performed a thorough home inspection (PSR ¶ 29); (6) Defendant R. Stewart developed the plan by which the fire would be set (PSR ¶ 29); (7) Defendant R. Stewart had informed the CI about the process after the fire occurred, in which the CI "should call her at the office and tell the person who answers the telephone, something to the effect, 'I saw your commercial on Channel 41 and I had an accident.' . . . [then the CI] would be placed on hold, at which point, he should hang up, and then call back and ask for 'Rosa.'"

((PSR ¶ 25); (8) Defendant C. Stewart arrived at the residence with the equipment needed to start the fire (PSR ¶ 30).

As evidenced by the facts, by the time Defendant C. Stewart was apprehended by law enforcement, the Defendants had fully developed and planned out the mail fraud scheme.[1] If Defendant C. Stewart had successfully ignited the residence, there would be nothing further for the Defendants to do in order to finalize the mail fraud, except follow through with the already-established plan. Such detailed preparation demonstrates the imminency of the completion of the offense. *See, e.g., United States v. Waskom*, 179 F.3d 303, 308–09 (5th Cir. 1999) ("the sentencing court should assess the conspirator's degree of preparedness to accomplish the remaining acts believed necessary to complete the substantive offense."). Furthermore, there is no evidence at all that the Defendants hesitated in completing the mail fraud scheme prior to Defendant C. Stewart's arrest. *See e.g., United States v. Caulder*, No. 94-5784, 1995 WL 318588, at *2 (4th Cir. 1995) (finding that the three-point reduction did not apply where "the defendants were close to completion of all acts necessary for the substantive offense and there was no hard evidence that they had decided not to go forward with it.")

The Defendants rely heavily—both in their pleadings and at the hearing held

---

[1] The Court notes that, for purposes of applicability of the three-point reduction as to each Defendant, it is irrelevant which Defendant completed all, or most of the crucial acts because § 2X1.1(b)(2) clearly provides that "unless <u>the defendant or a co-conspirator</u> completed all of the acts the conspirators believed necessary . . . ." U.S.S.G. § 2X1.1(b)(2) (2008) (emphasis added).

9

before this Court—on a theory that the required condition precedent is the physical mailing of the fraudulent insurance claim to State Farm Insurance. *See* (R. Stewart Obj. 2) ("the paperwork for the claim had not been prepared, <u>let alone, mailed to the insurance company</u>. In fact, no claim had even been reported.") (emphasis added). There is no factual issue that any of the Defendants actually prepared or processed a fraudulent insurance claim with State Farm. Moreover, at no point did anyone knowingly cause to be delivered any mail matter that was materially false or fraudulent by the United States Postal Service.

It is the opinion of this Court that mailing a fraudulent insurance claim is not a required overt act in order to conspire to commit mail fraud under the clear facts of this case. First, § 2X1.1 (b)(2) "does not require the reduction for a conspirator who has made substantial progress in his criminal endeavor simply because a significant step remains before commission of the substantive offense becomes inevitable." *Waskom*, 179 F.3d at 308; *see also United States v. Brown*, 74 F.3d 891, 893 (8th Cir. 1996) (reduction may be denied "even though a defendant had not reached the 'last step' before completion of the substantive offense"). Second, it well understood that a "[c]onspiracy to commit a crime is a different offense from the crime which is the object of the conspiracy." *United States v. Donahue*, 539 F.2d 1131, 1135 (8th Cir. 1976) (*quoting Blue v. United States*, 138 F.2d 351, 360 (6th Cir. 1943)). As a result, federal courts have continuously held that conspiracy to commit mail fraud may be accomplished without mailing a letter. *See, e.g.*,

10

*United States v. Massey*, 827 F.2d 995, 1001 (5th Cir. 1987) ("it is not necessary that any one particular overt act be proven [to show conspiracy to commit mail fraud], including actual use of the mails."); *United States v. Reynolds*, 762 F.2d 489, 494 (6th Cir. 1985) ("Mailing is an element of the crime of mail fraud but not an element of the crime of conspiracy."); *Donahue*, 539 F.2d at 1136 ("we do not think that it was necessary to show as an overt act in furtherance of the conspiracy [to commit mail fraud] an actual use of . . . the mails . . . .").

Defendants' final argument, which was offered for the first time at this Court's March 30, 2009 hearing, is that the holding of the Eighth Circuit in *United States v. Westerman*, 973 F.2d 1422 (8th Cir. 1992) should govern this Court's holding due to the factual similarities. In *Westerman*, a defendant entered a guilty plea to one count of conspiracy to commit mail fraud. *Id.* at 1424. In that case, similar to the instant case, the defendant had taken part in a scheme to burn down a home and file a fraudulent insurance claim. In *Westerman*, however, the co-conspirators had successfully burned down the home, and sent in the claim for proceeds under her fire insurance policy. *Id.* at 1428–29. The Defendants in the case before the undersigned rely on the Eighth Circuit's holding that "[o]nce [one of the co-conspirators] sent in the claim for proceeds under her fire insurance policy, she had completed all the acts the conspirators believed necessary for successful completion of the mail fraud." *Westerman*, 973 F.2d at 1429.

The Court, however, feels that the Defendants have missed a key difference

between the facts in *Westerman* and the facts in the instant case. In *Westerman*, the co-conspirators successfully burned down the home <u>and</u> filed the fraudulent insurance claim. In the case before the undersigned, the Defendants' conspiracy ended when Defendant C. Stewart was arrested while trying to burn down the house. The language of the Sentencing Guidelines places significant emphasis on the inapplicability of the three-point reduction in cases where the conspiracy was prevented by law enforcement. *See* U.S.S.G. § 2X1.1 cmt. background (2008) ("In most prosecutions for conspiracies or attempts, the substantive offense was substantially completed or was interrupted or prevented on the verge of completion by the intercession of law enforcement authorities or the victim. <u>In such cases, no reduction of the offense level is warranted.</u>") (emphasis added); *see also United States v. Geevers*, 226 F.3d 186, 198 (3d Cir. 2000) ("This note [the Background Note to U.S.S.G § 2X1.1], in conjunction with the guideline's text, makes clear that interruption, except in the early planning stages, precludes the three-level reduction."). Because the Defendants' well-planned scheme was foiled by law enforcement, the Court finds that the holding of *Westerman* does not mandate the applicability of the three-level reduction.

## III. CONCLUSION

Accordingly, after careful review of the record and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED, and DECREED** that Defendants Iraida Alvarez, Adiaris Figuerola, Alexis Perez, Erlin Oswaldo Perez, Carlos Stewart, and Rosa

Stewart's Objections to the Presentence Investigation Report asserting entitlement to a three-point reduction under U.S.S.G. § 2X1.1 for an incomplete conspiracy be, and the same are hereby, **DENIED**. A continued sentencing hearing for all six Defendants in the above-styled action will hereby be **SCHEDULED** by separate order of the Court.

    **DONE and ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 15th day of April, 2009.

*[signature]*
JAMES LAWRENCE KING
U.S. DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:

<u>**Counsel for the Government**</u>
**Joseph B. Shumofsky**
United States Attorney's Office
99 N.E. 4th Street
Miami, FL 33132

<u>**Counsel for the Defendants**</u>
**Faith Mesnekoff**
Faith Mesnekoff, P.A.
2937 S.W. 27th Ave., Suite 202
Miami, FL 33133

**Richard C. Klugh, Jr.**
25 S.E. 2nd Avenue
Suite 1105
Miami, FL 33131

**Steven H. Kassner**
4000 Ponce de Leon
Suite 470
Coral Gables, FL 33146

**Susan K. Bozorgi**
Marrero & Bozorgi
777 Brickell Avenue
Suite 708
Miami, FL 33131

**Armando Hernandez**
Martin & Hernandez LLP
3191 Coral Way
Suite 1005
Miami, FL 33145

**Herman F. Rubio , Jr.**
10800 Biscayne Boulevard
Miami, FL 33161-7400

**Alexander F. Fox**
Alexander F. Fox, P.A.
2333 Brickell Avenue
Suite A-1
2 Grove Isle Drive #1409
Miami, FL 33129

**Roderick D. Vereen**
Brinkley Henrys & Lewis
4770 Biscayne Boulevard
Suite 1200
Miami, FL 33131